[Civ. No. 23655. Second Dist., Div. Two. Sept. 14, 1959.]

MARGARET MARKWELL, Appellant, v. RUBY SYKES, Respondent.

644

Brock, Fleishman & Rykoff and Robert L. Brock for Appellant.

Robert A. Cushman, Melvin B. Grover and Henry E. Kappler for Respondent.

ASHBURN, J.—Appeal from judgment of nonsuit in plaintiff's slander action. The amended complaint alleged that plaintiff conducted a rest home for aged persons in Los Angeles pursuant to license issued by the Department of Social Welfare of the County of Los Angeles; that defendant knew that said department received complaints and ordered inspections of the operation of rest homes. That on July 28, 1954, defendant, acting under an assumed name, verbally stated to Marjorie Skinner, one of the deputies in said department: "That, 'plaintiff used hypodermic needles and injected narcotics into the bodies of her patients to keep them quiet so that she could conduct drinking parties and gambling in her home.' That, 'plaintiff locked her patients in bedrooms of her home after administering to them a narcotic shot to keep them quiet, so that she could conduct drinking parties and gambling in her home.' That, 'plaintiff had insane patients locked in her bedrooms to keep them quiet while she conducted wild parties for drinking and gambling in her home.' That, 'plaintiff permitted her patients to participate in gambling on her premises and afterwards administered to them a shot (implying a narcotic shot), locked them up in

her bedrooms, so that she would not be bothered with them any more.' That, 'plaintiff operated and conducted gambling in her garage on her premises.' '' It was also alleged that said statements were false and malicious, known to be false, made with malice and ill will toward plaintiff and with intent to injure her in her business etc.; concealment of the cause of action was also charged and damages were alleged.

Appellant's opening brief appropriately says: ''The nonsuit was the result of a ruling by the trial court that the principal witness for appellant was incompetent to testify with respect to material and relevant facts in support of appellant's causes of action solely because of the provisions of section 1881, subdivision 5 of the Code of Civil Procedure which, in the view of the trial court, barred the witness' testimony as privileged communications. Whether the construction and application of the aforesaid statute by the Court below, in the light of the particular record herein, was correct is the fundamental question presented on this appeal.'' Said section 1881 says: ''There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases: . . . 5. [Public officers.] A public officer can not be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure.''

Prior to trial defendant initiated proceedings for the taking of the deposition of said Marjorie Skinner, who testified that she was then a retired social worker of the Public Welfare Commission of Los Angeles County and immediately claimed that communications made to her as an employee of that commission, and any records of same, were confidential, that she had consulted the county counsel and been so advised; she further refused to answer any questions as to any complaint concerning the home operated by plaintiff or as to any records of same. The matter was then presented to the court (a judge other than the trial judge) for a ruling upon the question of privilege, all such objections were overruled and the witness was ordered to answer the questions. In due course she appeared and testified fully upon the subject.

The whole trial revolved around the question of privilege. When the court had indicated that it was about to sustain that objection counsel for plaintiff made this offer of proof: ''MR. BROCK: We would prove by this witness's [Mrs. Skinner's] testimony—and I might say that this would be the only

testimony we would have relative to the publication of the slander—the following: That the defendant, Ruby Sykes, stated to this witness that at a party given by the plaintiff, the plaintiff had said that she had given the aged ladies— referring to the ladies whom she had in her home for the aged—shots of narcotics to put them to sleep; further, that the defendant stated to this witness that there was and had been both at the party and other occasions gambling conducted in the garage at the home of the plaintiff; and further, that the defendant said on several occasions that she wanted this witness to go out right away and get the plaintiff's license, that the plaintiff was not a fit person to operate a home for the aged; and that resulting from that conversation the Department, the Bureau of Public Welfare did conduct an investigation. That would be our proof on this point.'' The objection having been sustained, counsel for defendant made a motion for nonsuit. ''MR. GROVER: So on the basis of that, your Honor, at this time the defendant, Ruby Sykes, moves the Court for a nonsuit. THE COURT: Do you want to state for the record the grounds for your motion? MR. GROVER: The ground being, your Honor, that there is an insufficiency of evidence to prove the allegations contained in the complaint. MR. BROCK: I take it that relates to the allegations as to the utterance of the slander? That is the only issue we are concerned with. MR. GROVER: As to the liability; that does not go to the question of damages. THE COURT: Well, the Court feels that the motion must be granted and is granted. And I should like to state so there is no misunderstanding as to the Court's rulings made which precluded the evidence, which otherwise, of course, would have meant that the Court would not have granted the nonsuit had it been received, but the Court's view is that the agency involved here is a public agency and it has a responsibility, a public responsibility with respect to homes of this type for the aged. Apparently it has licensing authority.''

Arguments presented by respondent in the lower court and here proceed from time to time upon the assumption that somehow defendant has a valid claim of privilege with respect to the words alleged to be slanderous. But the respondent's brief concedes the contrary. ''Appellant asserts that the defendant Sykes, during the taking of her deposition, made no claim of 'privilege.' Obviously, this is accurate, since *no such privilege could be asserted* by the defendant. . . . It is apparent that respondent cannot be charged with any waiver.

Counsel for respondent did not represent the witness and *could not instruct her not to answer.''* Manifestly this is true. ■ The privilege is for the benefit of the state (58 Am.Jur. § 534, p. 300) or its agencies and the cloak of testimonial immunity is thrown only around such public officials. (Witkin on California Evidence, p. 487, § 436b.) ■ Whether there can be any waiver is often a difficult question (Fricke on Cal. Crim. Evidence (3d ed.), p. 314) ; when the right of waiver exists it cannot be exercised by a subordinate employee in the exercise of his own discretion. (97 C.J.S. § 307, p. 852; *Gilbertson* v. *State*, 205 Wis. 168 [236 N.W. 539, 540-541].)

■ In any event the existence of a privilege in the state presents a question for the court (*People* v. *Curry*, 97 Cal. App.2d 537, 548 [218 P.2d 153] ; *Crosby* v. *Pacific S.S. Lines* (9 C.C.A.), 133 F.2d 470, 475; 8 Wigmore on Evidence (3d ed.), § 2379, p. 799; *Dwelly* v. *McReynolds*, 6 Cal.2d 128, 131 [56 P.2d 1232] ), not for the head of the department, to determine (97 C.J.S. § 305, p. 848) ; on a parity with that question is the further one whether the public interest would suffer by a disclosure. (See annotations at p. 451 of vol. 95 Lawyers Edition of U. S. Supreme Court Reports, and at p. 740 of 97 L.Ed.; also *Holm* v. *Superior Court*, 42 Cal.2d 500, 507 [267 P.2d 1025, 268 P.2d 722].)

*State* ex rel. *Douglas* v. *Tune,* 199 Mo.App. 404 [203 S.W. 465], discusses the question of privilege in a libel suit upon a complaint similar to the one at bar. At page 467 [203 S.W.] it is said: "The creation of the board, in itself and in a measure, invites complaints from citizens of their officers and of public employes. If every citizen who knows of the unfitness of an officer or employe, or of facts he thinks require an investigation, believes it his duty to lodge information before the board, he will hesitate a long while before doing so if he knows his complaint is to be made public and become of the public records, so that any one may have access to it and he subjected to action for a possible libel. It is not to be expected, if that is so, that very many will come forward and lodge a complaint. We think that if it was understood that the complaints lodged by citizens against these employes were to become public property, without the consent of the party filing them, that the very object for which this board is created would be defeated. It may be that in sealing the records, so far as relates to these complaints, from public inspection, some individual will be hurt, but the right of that individual must yield to the right and to the benefit of the

public at large. In our opinion these communications by citizens to the complaint board, covering the conduct of public officers and employes, are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated." To the same effect see *Runyon* v. *Board etc. of Calif.*, 26 Cal.App.2d 183, 184 [79 P.2d 101].

The Manual for Boarding Homes for Aged and Children, adopted and used by the Department of Social Welfare, declares that "Boarding home records shall be confidential." It then enumerates a number of permissible exceptions and concludes as follows: "In the subpoena of records and witnesses by a court when the action does not concern the licensing program, the attention of the court shall be called to the confidential nature of the records." This procedure was pursued at bar and an adverse ruling by the court was followed by the witness who spread a full disclosure upon the court record through her further testimony.

The assertedly privileged material having been incorporated in the Skinner deposition, defendant is driven to the extreme of asserting that she herself had a privilege of exclusion when the matter was offered at the trial or that it was necessary for the county to renew its claim of privilege at the trial. Obviously the defendant has no privilege pertaining to said public information at any time or place. So far as the county is concerned, it is well settled that once the privilege is waived it is gone for good. (*Deacon* v. *Bryans,* 212 Cal. 87, 93 [298 P. 30]; *Agnew* v. *Superior Court,* 156 Cal.App.2d 838, 840-841 [320 P. 2d 158].)

Moreover, 8 Wigmore on Evidence (3d ed.), section 2374, pages 753-754, speaking of the "informer privilege" says: "(1) The privilege applies only to the *identity* of the informant, not to the contents of his statement as such, for, by hypothesis, the contents of the communication are to be used and published in the course of prosecution. Much less does the privilege apply to prevent merely the proof of contents which have already been 'de facto' disclosed,—as in an action against the informant for libel. To deny production in such a case is in effect to declare that the libel is privileged from liability. If that is indeed the judicial belief and the law, it should be frankly declared; if not, the action should not be defeated by an evasion which pretends to keep secret that which is not secret." The United States Supreme Court, in *Roviaro* v. *United States,* 353 U. S. 53, 59 [77 S.Ct. 623, 1 L.Ed.2d 639, 644]: "What is usually referred to as the informer's privilege

is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." See also *Pihl* v. *Morris* (Mass.), 66 N.E.2d 804, 806. The principle of these cases is applicable here. After Skinner's deposition testimony disclosing the entire privileged picture, given without further objection and under order of court, the privilege had been effectively waived by departmental action, positive or negative.

When Mrs. Skinner was directed by Judge McCoy (upon appropriate proceedings to that end) to answer all the allegedly privileged questions, she or her superiors had open to them a challenge of the order upon certiorari, habeas corpus, contempt or other special writ. They pursued none of these expeditious remedies and did not renew their objections upon resumption of the deposition. Nor did they renew any claim of privilege at the trial or voice any renewed objections based thereon. Disclosure of matter claimed to be privileged, when made pursuant to an unchallenged court order, is an irrevocable thing; the situation then falls within the quotations from 8 Wigmore, pages 753-754, and 1 L.Ed.2d 639, 644, *supra.* New York courts seem to hold that there is no voluntary disclosure (see nisi prius decision *In re Topliffe,* 77 N.Y.S.2d 716, 717) but the Sixth Circuit Court of Appeals ruled to the contrary in *Fraser* v. *United States,* 145 F.2d 139. Dealing with a husband-wife privilege the court said, at page 144: "It will be observed that Mrs. Fraser answered readily without objection, and disclosed not only possession of the money and securities, but their source. Fraser, on the other hand, claimed the privilege, but when directed to answer, complied without further protest. Had he persisted in his refusal to answer, it would, of course, have been at the hazard of being cited and punished for contempt, but in the event of punishment he would not have been without remedy and might have challenged the action of the court by petition for writ of habeas corpus, or by an appeal from the contempt order. He declined the hazard. May it thus not be said that though first invoking the privilege he ended by waiving it?

We think this is a logical conclusion. If it be urged that the vindication of the privilege does not require one to subject himself to punishment for contumacy, nevertheless a similar surrender results when a defendant, subject to a civil or criminal judgment which he believes to be erroneous, fails to appeal.'' At page 145: ''Assuming the order of the court compelling disclosure to have been erroneous as an invasion of privacy in communications between husband and wife, the disclosure, once made, is irrevocable. It is public property, and may not be recalled.''

While it is generally true that an intermediate order is subject to review and reversal in the trial court, this principle is not absolute. An intermediate order, like a judgment, is binding only so long as it has not been performed. (*Cf.* 3 Witkin, California Procedure, p. 2188, § 40.) When one judge undertakes to reverse it he cannot undo what has been done pursuant to it. Specifically, the trial judge's ruling that he was not bound by the order of another judge directing Mrs. Skinner to answer the disputed questions, did not and could not erase the fact that the Department of Social Welfare, through her, had spread the entire story (claimed to be privileged) upon the record and had effectually waived any further objection it might have had thereto.

Defendant now seeks to justify the nonsuit upon the grounds of absence of proof of falsity, malice, damage or any excuse for delaying suit for more than one year. She is not in position to capitalize those defects in the proof. After the trial had proceeded as a battle over the subject of privilege and the court had sustained defendant's objections based thereon, the court indulged plaintiff's counsel in another attempt to prove the conversation between Mrs. Skinner and defendant Sykes (the alleged slander); counsel for defendant renewed the objection of privilege under section 1881, subdivision 5, Code of Civil Procedure; plaintiff's attorney made his offer of proof upon the matter of the publication and contents of the alleged libel and proceeded with an attempt to show malice. Objection being made, the court said: ''I assume that it is agreeable with counsel that it be deemed that counsel's statement that what he expected to elicit from this witness is in the nature of an offer of proof and it may be deemed by the Court to be such and there is an objection to that point? MR. GROVER: That is correct. THE COURT: The objection is sustained and the offer is rejected.'' After further discussion the following colloquy occurred: ''MR. GROVER:

Well, I would move for a nonsuit at this time, your Honor, on the issue of liability. . . . So on the basis of that, your Honor, at this time the defendant, Ruby Sykes, moves the Court for a nonsuit. THE COURT: Do you want to state for the record the grounds for your motion? MR. GROVER: The ground being, your Honor, that there is an insufficiency of evidence to prove the allegations contained in the complaint. MR. BROCK: I take it that relates to the allegations as to the utterance of the slander? That is the only issue we are concerned with. MR. GROVER: As to the liability; that does not go to the question of damages. THE COURT: Well, the Court feels that the motion must be granted and is granted.'' Here follows the judge's explanation of his ruling which is above quoted.

 The governing nonsuit rule is declared in *Lawless* v. *Calaway*, 24 Cal.2d 81, 92 [147 P.2d 604] : ''There is a conflict of authority in this state regarding the practice to be followed by appellate courts in reviewing an order granting a nonsuit. It has been held in a long line of cases that on appeal from an order granting a nonsuit, the court will ordinarily consider only the grounds specified in the motion at the trial. [Citations.] On the other hand, almost an equal number of cases support the rule that a judgment of nonsuit will be upheld on appeal if it can be justified on any ground, whether made a ground of the motion or not. [Citations.]

''In resolving this conflict we should bear in mind that ordinarily the reviewing court will uphold the judgment or order of the trial court if it is right, although the reasons relied upon or assigned by the court are wrong. The doctrine is sound and salutary in most situations since it prevents a reversal on technical grounds where the cause was correctly decided on the merits. But this is not true as applied to nonsuits, for such a doctrine would frequently undermine the requirement that a party specify the ground upon which his motion for nonsuit is based in order to afford the opposing party an opportunity to remedy defects in proof. It seems obvious that the doctrine intended solely to uphold judgments correct on the merits should not be permitted to produce the opposite result. The correct rule is that grounds not specified in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion. This rule is complementary to the requirement that a party specify the grounds upon which his motion for nonsuit is based. The decisions and dicta in

cases which support a contrary rule are hereby overruled and disapproved.

"The defendant having withdrawn as a ground for nonsuit the contention that plaintiff failed to establish her right to maintain the action, which claimed defect might have been corrected by further proof, the ground is not available to defendant here." To same effect see 2 Witkin, California Procedure, pages 1861-1862, sections 129-130.

In the circumstances shown by this record it would be unfair to assume that plaintiff, if permitted to prove the slander itself, would be unable to make a prima facie showing of the other elements of her alleged cause of action or of its active concealment by defendant; it is not clear "that the defect is one which could not have been remedied had it been called to the attention of plaintiff by motion."

The judgment of nonsuit is reversed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied October 9, 1959, and respondent's petition for a hearing by the Supreme Court was denied November 10, 1959. Peters, J., was of the opinion that the petition should be granted.