[Civ. No. 10090.   Third Dist.   Mar. 6, 1961.]

JOHN ROCKEFELLER McCORMICK HUBBARD, a Minor, etc., et al., Petitioners, v. THE SUPERIOR COURT OF YUBA COUNTY, Respondent; LINCOLN CENTER FOR THE PERFORMING ARTS, INC. (a Corporation), Real Party in Interest.

[Civ. No. 10091.   Third Dist.   Mar. 6, 1961.]

Adoption of BABY ESPINOLA et al., Minors.  JOHN ROCKEFELLER McCORMICK HUBBARD, a Minor, etc., et al., Appellants, v. LINCOLN CENTER FOR THE PERFORMING ARTS, INC. (a Corporation), Respondent.

[Civ. No. 10092.   Third Dist.   Mar. 6, 1961.]

Adoption of BABY FRASURE, a Minor.  ELISHA DYER HUBBARD, Jr., a Minor, etc., et al., Appellants, v. LINCOLN CENTER FOR THE PERFORMING ARTS, INC. (a Corporation), Respondent.

Brobeck, Phleger & Harrison and Ray Manwell for Petitioners and Appellants.

Pillsbury, Madison & Sutro, Eugene M. Prince, Noble K. Gregory, Davis, Polk, Wardwell, Sunderland & Kiendl, Ralph M. Carson, James A. Thomas, Jr., Hewitt & McBride and J. R. McBride for Respondent and Real Party in Interest in No. 10090 and for Respondent in Nos. 10091 and 10092.

Louis J. Lefkowitz, Attorney General (New York), Julius Greenfield and P. Hodges Combier, Assistant Attorneys General, as Amici Curiae on behalf of Real Party in Interest in No. 10090 and Respondent in Nos. 10091 and 10092.

VAN DYKE, P. J.—The Superior Court of the County of Yuba by two orders made September 2, 1960, granted motions of Lincoln Center for the Performing Arts, Inc., a New York Membership Corporation, organized for charitable and educational purposes, hereinafter called "Lincoln," for inspection and copies of adoption records relating to three minors, John Rockefeller McCormick Hubbard, Harold Fowler McCormick Hubbard and Elisha Dyer Hubbard, Jr. Lincoln seeks information from the adoption files for evidentiary use in a proceeding pending in the Supreme Court of the State of New York, county of New York, to determine the devolution of New York property upon termination of a New York trust created by John D. Rockefeller, Sr., a New York resident. From these orders the minors and others have appealed and the appeals are presented on a single record. A petition for a writ of prohibition, 3 Civil No. 10090, was filed contemporaneously with the appeals because there appeared to be some doubt that the orders were appealable. Further investigation convinced counsel and this court that the orders were appealable and the appealability of those orders has not been attacked by respondent in the appeals. The appeals furnishing adequate remedy, the writ of prohibition becomes unnecessary, and the alternative writ heretofore issued must be discharged and the peremptory writ denied.

On July 3, 1917, John D. Rockefeller, Sr., created a trust which provided for income payments to his daughter, Edith Rockefeller McCormick, for life. Upon her death—in the absence of exercise by her of a power of appointment, which she did not exercise—the property was to be divided into as many trusts as Mrs. McCormick had children. She died in 1932, leaving three children, one of whom, Muriel McCormick Hubbard, enters into the case before us. Mrs. Hubbard died March 18, 1959, and her trust thereupon terminated. The

trust instrument provided that upon her death the corpus should go to her "issue" or, if none, to charitable institutions selected by the committee set up by the trust instrument, consisting of members of the Rockefeller and McCormick families. At Mrs. Hubbard's death her trust fund amounted to about $10,000,000. The trust committee found that she had died "without issue" within the meaning of the trust instrument and directed the trustee to distribute $100,000 to each of three charitable institutions, namely, Bennett College, Holy Trinity Church of Middletown, Connecticut, and Chicago Visiting Nurses' Association; and to distribute the balance of $9,700,000 to Lincoln Center for the Performing Arts, Inc. In November 1959, the trustee filed a petition in the Supreme Court of New York praying settlement of its accounts and authority to distribute the trust corpus in accordance with the direction of the trust committee. Lincoln appeared in the New York case in support of its claim to the property, and Leon Leighton, as guardian *ad litem* for four minors, including the three minor appellants herein, appeared in opposition to Lincoln and to the claims of the other beneficiary charities. The minors claimed the trust property on the ground that they had been adopted by Mrs. Hubbard and were "issue" within the meaning of the Rockefeller trust. Two of these four minor claimants of the New York property are appellants John and Harold Hubbard. They were adopted by Mrs. Hubbard by order of the Yuba County Superior Court, dated January 26, 1954. She also attempted to adopt the third minor appellant, Elisha Hubbard, Jr., in the same court, but the court denied the adoption by order dated August 20, 1956. Thereafter Mrs. Hubbard took Elisha to Nevada, and allegedly adopted him in that state on March 5, 1957. She also allegedly and in Nevada adopted the fourth minor claimant, Anna Hubbard, who is not a party in the case before us.

Mrs. Hubbard, by her will, now being probated in Connecticut, disposed of an estate of about $4,000,000 mainly in favor of the four adopted minors. In addition to the direct claims of the appellants involved in the New York proceedings, it was made to appear to the respondent court that they had other interests which might be jeopardized by the granting of the motions to open the adoption files. Mrs. Hubbard's will made direct reference to the Rockefeller trust with specific reference to the trust provisions for the disposition of the principal of her share which was being held in trust for her. She quoted from the Rockefeller trust as fol-

lows: " 'In case at the death of any beneficiary any portion of the principal of his share shall then remain in the hands of the Trustee, such portion shall upon the death of such beneficiary be paid to his issue, if any, *per stirpes* and not *per capita,* and if there shall be no such issue of such beneficiary so dying, then and in that event such portion shall be disposed of' " by committee appointment. Mrs. Hubbard in her will further declared: "It is my hope and desire that upon my death the principal of my share that is in the hands of the Trustee will be paid to my children whom I shall have lawfully adopted as my issue within the contemplation of said trust indenture." It was suggested to the respondent court that if the attack of Lincoln in the New York court should result in a declaration by that court that the adoption decrees were void, as Lincoln is contending they were, then a similar attack might be made and might succeed in Connecticut because Mrs. Hubbard's bequests were to her "lawfully" adopted children. It further appeared that Mrs. Hubbard's father, Harold F. McCormick, had created a trust of which she was one of the beneficiaries. It was therein provided that if she should die, leaving lawful issue surviving her, then the income from the trust estate which she was entitled to receive while living should be paid over and be distributed to such issue upon such shares and under such conditions as might be designated in her will. Thus the question of the meaning of the word "issue" as used in the McCormick trust might be affected by the New York judgment. Interests of the adopted children of .Mrs. Hubbard in the McCormick trust totaled approximately $6,000,000.

It was argued to the respondent court that the very size of the interests involved would invite prolonged and bitter attacks upon the interests of the children under the Rockefeller trust, the McCormick trust, and under Mrs. Hubbard's will. The minor appellants herein are of tender years. John is 7 years old, Harold is 7, and Elisha is 4.

In the New York court Lincoln has pleaded that the appellants herein are not the adopted children of Mrs. Hubbard; that the decree of the Yuba County Superior Court purporting to decree the adoption by Mrs. Hubbard of John and Harold was and is void and of no effect for the following reasons: 1. That at the date of her petition and of said adoptions the Yuba County court was without jurisdiction over the proceeding for the reason that Mrs. Hubbard was not a resident of the county of Yuba within the meaning of section 226 of the

California Civil Code. 2. That at the time of said purported adoptions Mrs. Hubbard had, as her primary motive therefor, which she fraudulently withheld and concealed from the Yuba County court, ulterior reasons and motives other than those contemplated and required by California law and contrary to the law and policy of New York, viz., the purposes (a) of continuing a dispute with her brother, Fowler McCormick, (b) of defeating the interest of her said brother in the remainder of the trust created by Harold F. McCormick, (c) of fraudulently defeating the interest of the charitable remaindermen to be selected by the committee in accordance with the John D. Rockefeller, Sr., trust. 3. That at the time of the purported adoptions Mrs. Hubbard was suffering from cancer from which she died in 1959, and knew or had cause to know that her condition was not susceptible of successful treatment, so that she could not expect in reason or in good faith to provide the children with a stable home environment or with normal or continuing parental guidance and supervision, and that she fraudulently concealed and wrongfully withheld all of said facts from the California court. 4. That at the time of said purported adoptions Mrs. Hubbard, as the prospective adoptive mother, fraudulently concealed and wrongfully withheld from the California court that two children adopted by her in the State of Connecticut in 1939, and now known as Charles McCormick Hardin and Edith McCormick Hardin, had been upon the petition of her brother, Fowler McCormick, removed from her care and custody by order of the Connecticut court upon findings that such removal was for the best interests of said minors. 5. That Muriel McCormick Hubbard fraudulently concealed and wrongfully withheld from the Nevada court that she had previously attempted to adopt the child known as Elisha Dyer Hubbard, Jr., in Yuba County, which adoption was opposed by the Department of Social Welfare of California on the ground that she was not a fit and proper person to have the custody and control of said child, and that the court had found it was not in the best interest of said child to remain in her custody and had denied her petition; that Mrs. Hubbard had fraudulently concealed from the Nevada court that she was not a fit and proper person to have the care and custody of said child; that the order of the Second Judicial District Court of Nevada for the County of Washoe, dated March 5, 1957, purporting to decree the adoption by Mrs. Hubbard of the child now known as Elisha Dyer Hubbard, Jr., was and is

void and of no effect for each and every one of the charged reasons against the validity of the California decrees. Lincoln concluded its pleading by charging that if the adoption decrees of the California and Nevada courts were given credence and effect in New York, the adoptions would frustrate and contravene the law and public policy of that state and the intention of John D. Rockefeller, Sr.; that the jurisdictions of the California and Nevada courts were fraudulently and deceptively invoked without disclosure of all of the material facts and without the requisite residence of domiciliary basis and that, therefore, the jurisdiction of said courts did not exist in fact or in law, which matters were not contested in an adversary proceeding and were in effect collusive; that the decrees of the California and Nevada courts were not entitled to faith and credit in the State of New York because entered without jurisdiction and contrary to the public policy and law of New York.

Section 227 of the Civil Code provides that in an adoption proceeding:

". . . The petition, relinquishment, agreement, order, and any power of attorney and deposition must be filed in the office of the county clerk and shall not be open to inspection by any other than the parties to the action and their attorneys and the State Department of Social Welfare except upon the written authority of the judge of the superior court."

It does not appear that this statutorily mandated cloture of adoption files has been construed by our reviewing courts. But we think the purpose and intent of our statute is clear. Adoptions are favored and their encouragement and facilitation, under state supervision, are of great import to the state and its people. Whenever a petition is filed the state undertakes a searching examination which is calculated to and does expose to the state investigators many secrets of all parties that would otherwise be forever unknown. A mother, having given birth to an illegitimate child, must lay bare the details of her misfortune, perhaps in her statements involving others who may be innocent, but will in any event be convicted without trial if cloture is broken; family secrets of petitioners for adoption must often be told to the investigators which, if ever revealed to the public, could embarrass and punish them through public censure. There is no need to elaborate. When these matters are reported to the court with action recommended by the state the proceedings in court are nonpublic, are in a real sense secret proceedings. The statute

748

requires this to be so, thus departing violently from regular court procedures which constitutionally must be open to the public, save for a few exceptions. ▐ All of this leads to the conclusion that the Legislature has expressed a firm state policy that the statutory cloture is never to be broken save in exceptional circumstances and for good cause approaching the necessitous.

We note with interest that New York has long had a substantially identical statute, has strengthened it from time to time, and that her courts have construed it as we construe our own. (See *People* v. *Doe,* 138 N.Y.S.2d 307, and *In re Glasser,* 198 Misc. 889 [100 N.Y.S.2d 723].)

▐ Our cloture statute does permit a superior court in the county where the adoption proceedings were taken to break the seal of cloture and permits inspection of the adoption files upon good cause shown, and it is equally obvious that in passing upon a request for inspection the superior court exercises judicial discretion in granting or denying the request. ▐ The orders appealed from cannot here be reversed unless from the whole record this court must conclude that judicial discretion was abused.

Lincoln, in contesting the claims of the appellants, makes a two-pronged attack in the New York court. First, it says that by a proper interpretation of the language of the Rockefeller trust appellants are not the issue of their adoptive mother and cannot take. That, of course, presents an issue to the New York court, in the resolution of which no aid could be gained by inspection of the Yuba County adoption files. But Lincoln says further that if the Rockefeller trust be construed favorably to the childrens' claims that they are ''issue'' of their adoptive mother, then the California decrees of adoption are void for the various reasons asserted in Lincoln's pleadings hereinabove related. Lincoln proposes to prove in New York that Mrs. Hubbard was not a resident of Yuba County and that, even if she were, she was so diseased and so evilly motivated as to be unfit to be an adoptive parent to the infants; that she obtained the approval of the Yuba County court by concealing these matters from it.

▐ Under the circumstances was the Yuba County court guilty of abuse of judicial discretion in opening the adoption files covering John and Harold Hubbard to investigation and perusal by Lincoln with the authority to obtain exemplifications of the contents of those files in aid of its attack against the children which it is making in New York? We think it was.

Lincoln desires to examine the adoption files for the purpose of obtaining evidence to support its attack on the validity of the decrees in the courts of New York. Appellants say that to open the files for such purpose would be futile and therefore unjustifiable because the New York courts will not consider such an attack nor permit such use of any evidence that may be thus obtained, being bound to give full faith and credit to the California decrees. The United States Constitution, article IV, section 1, provides that: "Full faith and credit shall be given in each State to the . . . judicial proceedings of every other State," and Congress, through 28 United States Code Annotated section 1738, implementing the constitutional mandate, has declared that "Such . . . judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." Discussing these provisions the United States Supreme Court in *Johnson* v. *Muelberger*, 340 U.S. 581 [71 S.Ct. 474, 95 L.Ed. 552, 556], said:

". . . There is substantially no legislative history to explain the purpose and meaning of the clause and of the statute. From judicial experience with and interpretation of the clause, there has emerged the succinct conclusion that the Framers intended it to help weld the independent states into a nation by giving judgments within the jurisdiction of the rendering state the same faith and credit in sister states as they have in the state of the original forum. The faith and credit given is not to be niggardly but generous, full. '[L]ocal policy must at times be required to give way, such "is part of the price of our federal system." '

"This constitutional purpose promotes unification, not centralization. It leaves each state with power over its own courts but binds litigants, wherever they may be in the Nation, by prior orders of other courts with jurisdiction. 'One trial of an issue is enough. "The principles of res judicata apply to questions of jurisdiction as well as to other issues," as well to jurisdiction of the subject matter as of the parties.' "

What then is the status of the adoption decrees in California? They are beyond collateral attack on any question whether of jurisdiction or otherwise. Concededly, Lincoln makes a collateral attack in New York. Adoption proceedings

are of statutory nature and our Legislature has established a complete legislative scheme whereunder adoptions may be granted or denied by the courts to which the resolution of all issues has been committed. Proceedings are initiated by the filing of a petition in the superior court of the county of residence of the proposed adoptive parents. The state actively participates in the proceedings, and to all intents and purposes is a party thereto. The statutes require that upon filing the petition notice shall be given to the state, which, of course, stands in the position of *parens patriae* to all children within its borders. The notice is served upon a state agency, the Department of Social Welfare, which represents the state and which must actively examine into all matters touching the propriety of the proposed adoption, being charged at all times, as is the court also, to keep foremost in consideration the welfare of the child proposed to be adopted. The department must, itself, obtain parental consents where necessary, must examine into the merits and report upon the matter to the court, either recommending granting or denial of the petition for adoption. The proceeding has all the incidents of an adversary proceeding in the court, the statutory plan requiring that nothing be taken for granted or by default. The court is charged with the duty of examining into every facet of the matter, including interrogation of the proposed adoptive parents touching their qualifications. In the proceedings here involved the department recommended against adoption. Hearings were held at which counsel appeared for the petitioner and for the department. Adoptions were granted in the proceedings for the adoption of John and Harold Hubbard and denied in the proceeding to adopt Elisha Hubbard, Jr. It is clear that the court had jurisdiction of the subject matter and of all necessary parties. The court expressly found upon substantial evidence that Mrs. Hubbard was a resident of the county of Yuba and that it was for the best interests of John and Harold that the adoptions be granted. It was ruled otherwise as to Elisha. ▮▮ Under the circumstances shown by the record no collateral attack upon these adoption decrees would be permitted in California. No claim is made or could be made that there is any defect in these proceedings which appears upon the face of the record. Lincoln proposes to prove in New York that Mrs. Hubbard was not a resident of Yuba County and perjured herself when she testified she was; that she concealed from the California court, with fraudulent intent, the condition of her health; that she con-

cealed from the court with like intent various matters alleged by Lincoln touching her fitness to be an adoptive parent. All of these matters were either tried out or could have been tried out before the California court. If fraud was committed in any of these matters it was intrinsic fraud which cannot be taken advantage of in a collateral attack. In these proceedings everyone who had a right to a trial had one, and no stranger, such as Lincoln, could in California make the attack Lincoln is making in New York. (*Pico* v. *Cohn,* 91 Cal. 129 [25 P. 970, 27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336]; *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105]; *Gale* v. *Witt,* 31 Cal.2d 362 [188 P.2d 755]; *Jorgensen* v. *Jorgensen,* 32 Cal. 2d 13, 18 [193 P.2d 728].)

Lincoln cites in support of its claimed right to attack the adoption decrees such cases as *Williams* v. *North Carolina,* 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273], and *Williams* v. *North Carolina,* 325 U.S. 226 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366]. Such cases are not controlling here. They stem from the common-law concept of matrimonial domicile and involve judgments abolishing that status through divorce. Adoption proceedings were unknown to the common-law and are in rem and create a status rather than abolishing one. (*Adoption of Barnett,* 54 Cal.2d 370 [6 Cal.Rptr. 562, 354 P.2d 18].)

From what has been said it is clear that the orders appealed from are in derogation of a strong state policy, placing a cloture upon the files in adoption proceedings; that the burden was upon Lincoln to show good cause why this policy should be negated in its behalf; that the interests of the children involved would or could be injured by the lifting of cloture; and that it is futile to make anything in the files available for evidentiary use in New York, since the court there will afford full faith and credit to the adoption decrees and will reject evidence offered in support of an attack that cannot properly be made. Whatever effect it may have in the New York proceedings, John and Harold are the adopted children of Mrs. Hubbard. We are satisfied respondent court abused its discretion in breaking cloture and the orders appealed from must be reversed, unless those orders can be upheld upon a ground urged by Lincoln which we shall now discuss.

Lincoln argues that because counsel for the children inspected the adoption files, obtained exemplified copies of various documents contained in the files and a portion of a

stenographic report of the hearings, which it is asserted they have used as exhibits to their pleadings in the New York court, that equity requires a like privilege be extended to Lincoln. In doing this, however, counsel for the children was exercising a privilege which the cloture statute expressly reserved to him. The files are never closed to parties to the proceedings or their attorneys. If there be inequity here it is the fruit of express statutory provisions and does not avail Lincoln. The respondent court was not exercising equitable powers in opening the files.

Although we have discussed particularly the order opening the files in the adoption proceedings of John and Harold Hubbard wherein adoptions were granted, the same conclusions must be arrived at as to the order opening the files in the proceedings involving the attempted adoption by Mrs. Hubbard of Elisha Dyer Hubbard.

For the reasons hereinbefore given, the alternative writ of prohibition heretofore issued in 3 Civil No. 10090 is discharged, and the peremptory writ is denied. The orders appealed from, 3 Civil Nos. 10091 and 10092, are reversed.

Peek, J., and Schottky, J., concurred.

Petitions for a rehearing were denied April 4, 1961, and the petition of real party in interest and respondent Lincoln Center for the Performing Arts, Inc., for a hearing by the Supreme Court was denied May 3, 1961.