[Civ. Nos. 27821, 27904. First Dist., Div. One. Aug. 6, 1970.]

HRAYR TERZIÁN, as Director, etc., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
IDELLA BOYD, Real Party in Interest.

## COUNSEL

Richard J. Moore, County Counsel, and Charles L. Harrington, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

John H. Sutter for Real Party in Interest.

## OPINION

**SIMS, J.**—By these proceedings petitioner as the Director of the Department of Social Welfare of the County of Alameda seeks to avoid disclosure of information and records concerning a minor who was committed to the department to arrange adoptive placement or to make a suitable plan (Civ. Code, § 226c) after she had been declared free from parental control and custody (see Civ. Code, §§ 232-239), and who is also the subject of proceedings in which the real party in interest seeks to be appointed her guardian. In 1 Civil 27821 petitioner seeks a writ of mandate[1] to set aside an order entered in the guardianship proceeding which granted the motion of real party in interest that the welfare department be compelled to answer certain interrogatories. In 1 Civil 27904 he seeks a writ of prohibition[2] preventing enforcement of an order by which the court in the guardianship proceedings ordered the probation department to investigate the respective homes of the real party in interest and of proposed adoptive parents with whom the child had been placed for adoption by the welfare department. (See Prob. Code, § 1443.)

In support of each petition the director contends that the matters which are the subject of inquiry by real party in interest and by the court are protected from disclosure by express provisions of state law, and by the provisions of the Evidence Code relating to privilege. He also claims, with respect to the petition for a writ of prohibition, that the trial court has exceeded its jurisdiction with respect to the scope of the inquiry. It is concluded that when weighed against the public interest in the confidentiality

---

[1]See Witkin, Cal. Procedure (1967 Supp.) Extraordinary Writs section 78, page 1069, "Mandamus to prevent improper discovery proceeding." Cf. authorities in footnote 2 below.

[2]See *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185 [23 Cal.Rptr. 375, 373 P.2d 439]; *City & County of S.F.* v. *Superior Court* (1951) 38 Cal.2d 156, 160-161 [238 P.2d 581]; *Franchise Tax Board* v. *Superior Court* (1950) 36 Cal.2d 538, 545 [225 P.2d 905]; *City Council* v. *Superior Court* (1962) 204 Cal.App.2d 68, 71 [21 Cal.Rptr. 896]; and cf. *Hubbard* v. *Superior Court* (1961) 189 Cal.App.2d 741, 743 [11 Cal.Rptr. 700].

of information concerning adoption proceedings, the interests of justice in the guardianship proceedings dictate that there is a necessity for limited disclosure of information concerning the proceedings taken by petitioner to arrange adoptive placement or make a suitable plan for the child.

The facts, as gleaned from the petitions, the opposition of real party in interest to the petition for writ of mandate, and extracts from prior and pending proceedings in the trial court, which are attached to the pleadings filed with this court, are as follows:

The minor Denae, a female child, was born July 27, 1964. She was placed in the custody of real party in interest three days after her birth, and remained with her until March 24, 1969. On December 6, 1967, real party in interest and her husband filed a petition through which, as subsequently amended, they sought to adopt the minor, to have her declared free from the custody and control of her natural parents, and to secure the appointment of a guardian under the provisions of section 239 of the Civil Code. In May 1968 and early December 1968, hearings were held on the petition at which petitioners, the natural parents and the welfare department, were all represented by counsel. According to real party in interest, investigations were conducted by both the welfare department and the probation department in connection with the prior proceedings. The welfare department, after originally recommending that custody be given the natural parents (May 31, 1968), subsequently recommended that the child be turned over to it for placement (December 3, 1968). The probation department, however, recommended that custody be given to real party in interest.

On March 24, 1969, the court made its order in which it denied the petition to adopt the minor (Civ. Code, § 226) and dismissed it without prejudice, granted the petition to declare the minor free from the custody and control of her natural parents (§ 232), and denied the petition for the appointment of a guardian under the provisions of section 239 of the Civil Code. Pursuant to the provisions of section 226c[3] the court committed the minor to the care of the welfare department, as a licensed adoption agency, and ordered real party in interest and her husband to deliver the child to

[3]Civil Code section 226c provides:. "At the hearing, if the court sustains the recommendation that the child be removed from the home of petitioners because the agency has recommended denial or the petitioners desire to withdraw the petition or the court dismisses the petition and does not return him to his parents, the court shall commit the child to the care of the State Department of Social Welfare or the licensed county adoption agency, whichever agency made the recommendation, for that agency to arrange adoptive placement or to make a suitable plan. In those counties not covered by a licensed county adoption agency, the county welfare department shall act as the agent of the State Department of Social Welfare and shall provide care for the child in accordance with rules and regulations established by the department."

the welfare department. Pursuant to this order the custody of the child was relinquished by real party in interest on March 24, 1969.

On April 4, 1969 the welfare department filed a statement in the prior proceedings indicating that the child would be placed in a preadoptive study home.

On July 29, 1969 real party in interest filed her petition for appointment as guardian of the person of the minor in which she alleged substantially all of the facts set forth above, and further stated: "It is necessary and convenient that a guardian be appointed for the person of said minor and that petitioner be appointed as such guardian because of the facts alleged herein and because petitioner has been until only a few months ago the only person known to said minor child as a mother and petitioner has been the only person who has shown any interest or care in the said minor child. Petitioner is a proper person to have such custody. Sufficient time has now elapsed for the court and for the Alameda County Probation Department to determine the wisdom of continuing to maintain the child in a foster home selected by the Alameda County Welfare Department." Thereafter, the welfare department filed a statement, in each of the proceedings, in which it advised that the child had been placed for adoption on August 5, 1969. The department's motion to dismiss the guardianship proceedings was denied October 27, 1969.

The interrogatories propounded to the welfare department over date of December 30, 1969 sought to elicit information covering the identity of the persons who had custody of the child since March 24, 1969, and other particulars concerning the activities of the welfare department in connection with its attempts to arrange adoptive placement for the child. The department revealed the names of the caseworkers involved; that the child had been immediately placed in a preadoptive foster home; that the persons then seeking adoption were not the first persons with whom the child was placed; and that the prospective adoptive parents had not then filed a petition for adoption and had not been advised of the pendency of the guardianship proceedings. All other inquiries were answered by a statement that the information or record referred to was confidential under sections 36105 and 36421 of title 22 of California Administrative Code.[4]

---

[4]These sections provide: "36105. (a) The agency shall maintain a case record for each family unit or individual served in its adoption placement program. (b) During the study process the agency shall maintain a complete record on each case. Each case record shall include a face sheet or application form, a typewritten record of the study, medical and other reports, correspondence, applicable legal documents, verifications, evaluations of findings, decisions reached, actions taken, and court reports. (c) All information in adoption case records shall be confidential."

"36421. The confidentiality of case records shall be maintained. Information from case records can be released only to those agencies specified in the law, parties to the

Thereupon, real party in interest made her motion to compel answers to interrogatories, and on January 30, 1970 the court ordered the department to answer all unanswered interrogatories by February 2, 1970. The mandate proceedings ensued.

On February 3, 1970, on motion of the real party in interest, the court ordered the probation department to investigate and report on the home of the real party in interest, and, as well, the home of the adoptive parents. "A confidential report with no limitations placed upon the Probation Department." The court further ordered the welfare department to hold any adoption proceedings with respect to the child in abeyance. The application for a writ of prohibition followed.

After the oral hearing on the alternative writs which were issued by this court, a stipulation was filed which indicates (1) that the probation department has completed preparation of the report ordered by the trial court, but has withheld transmission of the report to the court pending decision of the matters presented in these proceedings; and (2) that the trial court's order contemplated that the report would be kept confidential by the attorneys and the court.

*Jurisdiction*

■ The petitioning director recognizes the rule promulgated in *Guardianship of Henwood* (1958) 49 Cal.2d 639 [320 P.2d 1], as follows: "In the absence of an express provision depriving the court of power to appoint a guardian of a child that has been validly relinquished for adoption, we do not believe that the adoption statutes may reasonably be interpreted as depriving such a child of the protection afforded by guardianship proceedings in a proper case." (49 Cal.2d at p. 644. See also, *Guardianship of Guidry* (1961) 196 Cal.App.2d 426, 432 [16 Cal.Rptr. 579].) He insists, however, that while the adoption proceeding is running its proper course the jurisdiction of the court in the guardianship proceedings may only be exercised upon a showing that the agency is unfit to have temporary custody or that adoption is improbable. (See *Guardianship of Henwood, supra,* 49 Cal.2d at p. 645; and *Guardianship of Guidry, supra,* 196 Cal.App.2d at p. 433.) He acknowledges that the guardianship court had authority to order an investigation by the probation department pursuant to the provisions of section 1443 of the Probate Code, and section 582 of the Welfare and Institutions Code.[5] He contends that the court exceeded its jurisdiction

adoption or their legal counsel, or persons authorized to receive it. (See Sec. 36103) Records shall not be produced in court on request of any of the parties except on subpoena. Records shall be made available to inspection by grand juries only on order of the court. (See Sec. 36103, Regulations)."

[5]Probate Code section 1443 provides in pertinent part: "The probation officer in the county in which the petition for appointment of guardian of a minor or incom-

in failing to limit the probation department's inquiry to the two issues recognized in *Henwood* and *Guidry*.

His petition for a writ of prohibition alleges that the trial court "has no jurisdiction in this matter in that should the Court's order be executed, not only would the Welfare Department be unlawfully required to divulge the contents of its files, but it would also result in the introduction and consideration of irrelevant evidence into the Guardianship case and, if the Court intends to award custody of the child based upon the contents of the report, would result in unlawfully depriving the Alameda County Welfare Department of the custody of this child." Those issues are not jurisdictional. The order to the probation department does not of itself require the welfare department to open its files; that issue could only arise upon a subsequent demand and refusal. It may be true that investigation of the conditions in the real party in interest's home would prove irrelevant if the conditions precedent to disturbing the agency's custody were not established, but that would not affect the jurisdiction of the court. It cannot be presumed that the court would remove custody from the agency without the showing required by *Henwood* and *Guidry*.

The crux of the matter is not jurisdictional, but is presented by the question of reconciling the well-founded public policy for confidentiality in adoption proceedings with the legitimate interest recognized in *Henwood* in permitting someone interested in the welfare of the child to act to prevent abuses of the adoption procedure.
■

*Restrictions on Disclosure*
■
■ The sections of the regulations concerning adoptions set forth in the margin above are predicated upon the policy set forth in section 227 of the Civil Code which provides in part, ". . . The petition, relinquishment, agreement, order, and any power of attorney and deposition must be filed in the office of the county clerk and shall not be open to inspection by any other than the parties to the action and their attorneys and the State Department of Social Welfare except upon the written authority of the judge of the superior court. A judge of the superior court shall not authorize anyone to inspect the petition, relinquishment, agreement, order, or power of attorney

petent person is pending, shall make an investigation of each case whenever he is requested so to do by a judge of the superior court. . . ."

Welfare and Institutions Code section 582 provides: "The probation officer shall upon order of any court in any matter involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter."

or deposition or any portion of any such documents except in exceptional circumstances and for good cause approaching the necessitous. The petitioner may be required to pay the expenses for preparing the copies of the documents to be inspected." (See, *Hubbard* v. *Superior Court* (1961) 189 Cal.App.2d 741, 749-750 [11 Cal.Rptr. 700].)

It would be futile to make the court records confidential if the records of the adoption agency were open to the public. The regulations are a proper exercise of the power of the state Department of Social Welfare to regulate adoption agencies. (See, Welf. & Inst. Code, §§ 10552, 10553, 10554, 16000 and 16003; and *Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 570-571 and 573 [7 Cal.Rptr. 109, 354 P.2d 637].) Accordingly, the records fall within the provisions of subdivision (k) of section 6254 of the Government Code which exclude from the right of public inspection (Gov. Code, § 6253), "Records the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege."

These provisions, however, are not themselves determinative of the issues presented in these proceedings. Section 227 of the Civil Code recognizes that the judge of the superior court may authorize inspection of documents filed in adoption proceedings "in exceptional circumstances and for good cause approaching the necessitous." Section 36421 of the regulations recognizes that persons may be authorized to receive confidential information from case records, and that case records may be produced in court by subpoena, and may be made available to a grand jury on order of the court. Section 6255 of the Government Code reads: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." The question, therefore, is the extent of the power of the trial court to make this confidential information available in the guardianship proceedings, and whether or not there has been an abuse of discretion in the exercise of that power.

Before considering the questions last stated, attention is directed to the petitioner's contention that the information sought is privileged.

*Privilege*

Section 1040 of the Evidence Code[6] appears to govern the information

---

[6]Evidence Code section 1040 provides: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course

sought by the proceedings which petitioner has attacked through his two petitions to this court. The statutes and regulations referred to above indicate that the information concerning the placement and adoption of Denae was information acquired in confidence by the petitioner and the employees of his department in the course of their duties, and that it was not open or officially disclosed to the public prior to the time the claim of privilege was made.[7]

The privilege, however, is not absolute. As noted above the relevant statutes (Civ. Code, § 227, and Gov. Code, §§ 6254, subd. (k) and 6255) do not impose an absolute prohibition on disclosure of the information in question. (Cf., Evid. Code, § 1040, subd. (b), par. (1); and *Richards* v. *Superior Court* (1968) 258 Cal.App.2d 635, 636-639 [65 Cal.Rptr. 917], with Evid. Code, § 1040, subd. (b), par. (2), and *Hubbard* v. *Superior Court, supra,* 189 Cal.App.2d 741, 748.) Section 1040 itself furnishes rational guidelines for a determination of the conflicting claims for confidentiality of the adoption proceedings and for relevant evidence of the necessity and convenience for the appointment of a guardian because the adoption procedure is not running its proper course. It requires a weighing of "necessity for preserving the confidentiality of the information," with "the necessity for disclosure in the interest of justice." It expressly provides that "the interest of the public entity as a party in the outcome of the proceeding may not be considered." This, however, does not mean that the interests of the child (as represented by the agency) in protecting the family in which the child has been placed from undue harassment, the interests of the child in establishing her identity as a child of the adoptive parents, the interests of the prospective adopting parents in freedom from interference from past connections of the child, and the entire panoply of

---

of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. (b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

[7]Real party in interest states that petitioner waived the benefits of section 1040 of the Evidence Code because he did not rely upon it in refusing to answer the interrogatories. Since, as noted above, he asserted facts and regulations bringing the matter within the provisions of subdivision (a) of section 1040, he should not be foreclosed from relying on it now.

interests which led to the public policy of confidentiality enunciated in section 227, may not be considered.

The weighing suggested by section 1040 of the Evidence Code is a necessary process to the determination of the questions of the extent of the power of the court to make the confidential information available in the guardianship proceedings, and whether or not there has been an abuse of discretion in the exercise of that power.

### Disclosure and the Public Interest

In *Adoption of Graham* (1962) 58 Cal.2d 899 [27 Cal.Rptr. 163, 377 P.2d 275], the court observed, "The legislative scheme for the placement of relinquished children contemplates that the statutory proceedings will progress unhampered by extrinsic matters and with assurance that proper proceedings may consummate a valid adoption. (*Guardianship of Henwood,* 49 Cal.2d 639, 645-646 . . .)" (58 Cal.2d 899, 906. See also, *Adoption of Runyon* (1969) 268 Cal.App.2d 918, 921 [74 Cal.Rptr. 514]; and *Guardianship of Guidry, supra,* 196 Cal.App.2d 426, 432.)

The policy behind the statutorily mandated cloture of the files of a completed adoption has been set forth as follows: "Adoptions are favored and their encouragement and facilitation, under state supervision, are of great import to the state and its people. Whenever a petition is filed the state undertakes a searching examination which is calculated to and does expose to the state investigators many secrets of all parties that would otherwise be forever unknown. A mother, having given birth to an illegitimate child, must lay bare the details of her misfortune, perhaps in her statements involving others who may be innocent, but will in any event be convicted without trial if cloture is broken; family secrets of petitioners for adoption must often be told to the investigators which, if ever revealed to the public, could embarrass and punish them through public censure. There is no need to elaborate. When these matters are reported to the court with action recommended by the state the proceedings in court are nonpublic, are in a real sense secret proceedings. The statute requires this to be so, thus departing violently from regular court procedures which constitutionally must be open to the public, save for a few exceptions. All of this leads to the conclusion that the Legislature has expressed a firm state policy that the statutory cloture is never to be broken save in exceptional circumstances and for good cause approaching the necessitous." (*Hubbard* v. *Superior Court* (1961) 189 Cal.App.2d 741, 747-748 [11 Cal.Rptr. 700].)

It is also generally recognized that when the public interest in

securing information necessitates the free communication of such information on a privileged, confidential basis, disclosure of information so secured is against the public interest. (See, *Chronicle Pub. Co. v. Superior Court, supra,* 54 Cal.2d 548, 566-570; *City & County of S.F. v. Superior Court* (1951) 38 Cal.2d 156, 161-163 [238 P.2d 581]; *Craemer v. Superior Court* (1968) 265 Cal.App.2d 216, 220, 222 [71 Cal.Rptr. 193]; *Richards v. Superior Court* (1968) 258 Cal.App.2d 635, 638 [65 Cal.Rptr. 917]; *City Council v. Superior Court* (1962) 204 Cal.App.2d 68, 76 [21 Cal.Rptr. 896]; *Markwell v. Sykes* (1959) 173 Cal.App.2d 642, 647-648 [343 P.2d 769]; and *Runyon v. Board etc. of Paroles* (1938) 26 Cal.App.2d 183, 185 [79 P.2d 101].)

██ On the other hand, *Henwood* clearly indicates that real party in interest should be afforded the opportunity to make a showing of necessity or convenience by establishing that the agency is unfit, that the child's immediate welfare demands intervention, or that adoption is improbable and continued waiting room custody by the agency can no longer be justified. (49 Cal.2d at pp. 645-646.) It is obvious that such a showing cannot be made without some knowledge of the whereabouts of the child and the manner in which her care and custody are being administered.

The duty devolves on the court to evaluate these conflicting interests. (See, Evid. Code, § 1040; Gov. Code, § 6255; *City & County of S. F. v. Superior Court, supra,* 38 Cal.2d 156, 163; *Hubbard v. Superior Court, supra,* 189 Cal.App.2d 741, 748; and *Markwell v. Sykes, supra,* 173 Cal.App.2d 642, 647.)

It appears that the absolute privilege asserted by the petitioner would forestall any inquiry into matters which *Henwood* indicates shoud be aired for the protection of the child. On the other hand, answers to the interrogatories propounded by real party in interest would, in the event no grounds for guardianship were revealed, unwarrantedly open Pandora's box and release the ills which the policy of confidentiality in adoptions is designed to suppress. The logical untangling of this Gordian knot necessitates, as suggested by petitioner, that before information which public policy indicates should be kept confidential in connection with the adoption is released, there be established some preliminary basis for finding that the adoption procedure is not running its proper course, and that the agency is unfit to have temporary custody of the child, or that it is improbable that the child will be adopted. The trial court properly has exercised its statutory powers in ordering the probation office to make this inquiry, and in providing that its findings should be confidential. If the report indicates that the adoption procedure is running its proper course, the guardianship proceedings may be dismissed, or at least suspended for dismissal upon the

entry of a decree of adoption. On the other hand, if the report is to the contrary, the best interests of the child dictate that the issues suggested in *Henwood* be fully aired.

The order of the court, as qualified by the stipulation of the parties, preserves confidentiality to the extent that the information contained in the report of the probation office shall only be imparted to the court and the attorneys for the parties. This form of limited disclosure places an unnecessary strain upon the duties and obligations of the attorney for the real party in interest to his client and to the court respectively. If he is informed concerning the identity of those to whom the custody of the child has been entrusted, his obligation to his client would indicate the necessity of an independent investigation which might prove as inimical to a properly proceeding adoption as would interference by his client. The interests of the child, which are paramount, will be equally well served if the probation report, before disclosure, is edited to delete references to identity of place and person. (See, e.g., *People* v. *Aranda* (1965) 63 Cal.2d 518, 530, fn. 10 [47 Cal.Rptr. 353, 407 P.2d 265]; *In re Waltreus* (1965) 62 Cal.2d 218, 223-224 [deletions] [42 Cal.Rptr. 9, 397 P.2d 1001]; and *Franchise Tax Board* v. *Superior Court* (1950) 36 Cal.2d 538, 542 [225 P.2d 905] [reference to corporations by number rather than name].)

Real party in interest should be permitted to examine, and cross-examine, the investigator within the foregoing limits, and request further inquiry upon any points relevant to the issues as defined in *Henwood*. But unless and until a prima facie showing is made that the adoption procedure is not running its proper course, the identity and location of those to whom the child is entrusted should remain confidential.[8]

Let a peremptory writ of mandate issue in 1 Civil 27821 directing the respondent court to set aside its order of January 30, 1970 which granted the motion of real party in interest for an order compelling further answers to her interrogatories dated December 30, 1969.

The alternative writ of prohibition is discharged and a peremptory writ

---

[8]Since the foregoing was written, it has been suggested by counsel for petitioner that the child has been withdrawn from the home in which it was placed on August 5, 1969 and presumably was living at the time these proceedings were instituted. Real party in interest is, of course, entitled to bring that fact to the attention of the court. Unless some cause not presently apparent exists, inquiry into this unsuccessful placement would not appear to interfere with petitioner's present and potential attempts to carry out the mandate of the order in the prior proceedings. This he is bound to do unless that order is vacated or is supplanted by an order in the pending guardianship proceedings. Therefore, the issues presented by the petitioners have not been rendered moot, although the developments may indicate the need for further inquiry within the limitations set forth in this opinion.

of prohibition is denied in 1 Civil 27904 insofar as the petition therein seeks to restrain the respondent court from carrying out its order to the probation department to investigate all matters in the guardianship, without prejudice however to the right of petitioner to renew its application for a writ of prohibition in the event disclosures inconsistent with the views expressed herein are threatened by the report of such investigation.

Molinari, P. J., and Elkington, J., concurred.