[Civ. No. 26284. Second Dist., Div. Four. May 24, 1962.]

CITY COUNCIL OF THE CITY OF SANTA MONICA et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; UNITED WESTERN NEWSPAPERS, INC., et al., Real Parties in Interest.

Robert G. Cockins, City Attorney, Robert D. Ogle, Assistant City Attorney, and James W. Shumar for Petitioners.

No appearance for Respondent.

Fogel, McInerny & Taft, Moe M. Fogel, Cornelius W. Mc-Inerny, Jr., and William J. Taft for Real Parties in Interest.

Stanley Mosk, Attorney General, Charles E. Corker, Assistant Attorney General, and Joan D. Gross, Deputy Attorney General, as Amici Curiae on behalf of Real Parties in Interest.

THE COURT.—This is a petition for a writ of prohibition to restrain the superior court from further proceedings in an action entitled *"United Western Newspapers, Inc., a California corporation, and C. Deane Funk,* Petitioners, versus *The City Council of the City of Santa Monica, a municipal corporation, et al."* In that action petitioners seek to compel the city council and its individual members to make public and permit inspection of all "minutes and reports referred to in this petition." This has reference to the minutes of a meeting of the city council on February 16, 1962, and the report of private investigators hired by the council to investigate the circumstances surrounding the dismissal of Otto Faulkner, Chief of Police.

It is alleged in the petition for a writ of mandate that on or about January 15, 1962, the acting city manager of the city of Santa Monica, at the direction of the city manager, discharged Otto Faulkner, Chief of Police of said city; that the city charter provides the city council shall appoint a city manager who shall appoint and may remove the chief of police; that on or about January 16, 1962, the city council employed private investigators to investigate the circumstances surrounding the dismissal of Otto Faulkner; that on February 16, 1962, the city council held a meeting closed to the public at which meeting it is alleged, upon information and belief, the council received from the investigators a detailed written report "covering the activities of George Bundy, Otto Faulkner and other members with the City of Santa Monica"; that petitioners and other members of the public were refused admittance to said meeting of February 16, which, it is asserted, was in violation of Government Code, sections 54950 et seq., and were refused the right to inspect the minutes, records and other matters pertaining to said meeting, including the investigators' report; that, pursuant to section 1227 of the Government Code, they, as taxpayers, residents and citizens of the City of Santa Monica, and other members of the public, are entitled to such inspection.

The general demurrer of the city council to said petition was overruled, an answer was filed, and the matter set for hearing. Thereupon the within petition for a writ of prohibition was filed in this court by the city council, it being the contention of petitioners herein that further proceedings in mandate will be in excess of the jurisdiction of the trial court. Petitioners assert that the petition fails to state facts showing a right in petitioners to inspect, and a duty on the part of the city council to permit inspection of, the report of the investigators.

The first question concerns the availability to petitioners herein of the writ of prohibition. ''That writ is an appropriate remedy to arrest the proceedings in a court when they are 'without or in excess of' its jurisdiction and there is not a plain, speedy and adequate remedy in the ordinary course of law. (Code Civ. Proc., §§ 1102, 1103.)

''Notwithstanding the fact that the respondent court unquestionably has jurisdiction to grant or deny the motion for inspection, this court may act in a proper case when it appears that otherwise a failure of justice will occur in a matter of public importance by a wrongful or excessive exercise of jurisdiction.'' (*City & County of San Francisco* v. *Superior Court*, 38 Cal.2d 156, 160 [238 P.2d 581].)

By the issuance of the alternative writ herein this court determined the inadequacy of any other remedy, and it is not contended by respondent court or real parties in interest that the remedy by appeal at the conclusion of a hearing would be an adequate remedy.[1] In opposition to the issuance of the writ of prohibition, real parties contend that the jurisdiction of the trial court was not challenged in that court, thus petitioners are not in a position to seek the writ. They rely upon *Rescue Army* v. *Municipal Court*, 28 Cal.2d 460, 465 [171 P.2d 8], which holds that ''[t]he petition should affirmatively allege that the challenge to jurisdiction was raised in the lower court.'' The court in that case points out, however, that when the trial court has heard and determined that it has jurisdiction, prohibition will lie to prevent the exercise thereof when that jurisdiction has been challenged in that court ''by demurrer, motion, plea or other objection of some kind.'' It went on to hold that in the circumstances there presented it was apparent that the court had decided in

---

[1]See *Providence Baptist Church* v. *Superior Court*, 40 Cal.2d 55, 60 [251 P.2d 10]; *Rescue Army* v. *Municipal Court*, 28 Cal.2d 460, 466 [171 P.2d 8]; *Adolph* v. *Municipal Court*, 181 Cal.App.2d 198, 199 [5 Cal. Rptr. 212],

favor of its own jurisdiction and was proceeding to exercise it; it was determined that "it is not in the interests of justice to refuse to entertain the application because of the absence of a more complete showing in the petition." (Pp. 464-465.) It is aptly stated in *Monterey Club* v. *Superior Court,* 48 Cal.App.2d 131, 143 [119 P.2d 349] : "While it is true, as claimed by respondent, that ordinarily as a condition precedent to an application for a writ of prohibition on the ground of want of jurisdiction in the inferior tribunal to make the order, the claim of such excess or lack of jurisdiction should be called to the attention of the respondent tribunal unless the complaint on its face reveals its failure to state a cause of action, nevertheless this is not essential to the jurisdiction of this court to grant a writ of prohibition. [Citation.] This is merely a rule adopted by reviewing tribunals as a matter of respect for and consideration of the lower court and to aid in minimizing, if not preventing, unnecessary litigation." (See also, *Harden* v. *Superior Court,* 44 Cal.2d 630, 637-638 [284 P.2d 9].)

Upon the hearing of the general demurrer in the trial court it was claimed and fully argued that the petition for mandate failed to state facts showing that the investigation report was a public writing within the provisions of sections 1888 and 1894 of the Code of Civil Procedure, or the existence of a present legal duty on the part of the city council, under section 1227 of the Government Code, to make the report public. It thus appears that in overruling the demurrer and in setting the matter for hearing the trial court has determined that it has jurisdiction to compel the city council to act, based upon the petition for the writ, and has indicated its intention to hear the case. (See *Housing Authority* v. *Superior Court,* 35 Cal.2d 550, 557 [219 P.2d 457].) Prohibition is the proper remedy to test the jurisdiction of the superior court to proceed in these circumstances. (*City & County of San Francisco* v. *Superior Court,* 53 Cal.2d 236, 244-245 [1 Cal.Rptr. 158, 347 P.2d 294].)

We, therefore, reach the merits of the jurisdictional question, which must be determined under the principle that "any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on

*certiorari.''* (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715].)

Whether an excess of jurisdiction has been shown depends upon the legal nature of the report and the legal duty of the council with respect thereto. Section 1085 of the Code of Civil Procedure provides that a writ of mandate ''may be issued . . . to any . . . corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such . . . corporation, board or person.'' Thus, mandamus issues only to compel the performance of an act which the law specially enjoins. An applicant for the writ must show that his right thereto is clear and certain. (*Wallace* v. *Board of Education,* 63 Cal. App.2d 611, 616 [147 P.2d 8].)

The law under which the writ of mandate is sought is Government Code, section 1227, which provides: ''The public records and other matters in the office of any officer, except as otherwise provided, are at all times during office hours open to inspection of any citizen of the State.'' Section 1892 of the Code of Civil Procedure also accords to every citizen the ''right to inspect and take a copy of any public writing of this State, except as otherwise expressly provided by statute.'' Section 1888 of the same code defines ''public writings'' as all written acts or records of the acts of official bodies, tribunals and public officers, and section 1894 divides public writings into four classes: laws, judicial records, other official documents, and public records of private writings.

''In order that an entry or record of the official acts of a public officer shall be a public record it is not necessary that such record be expressly required by law to be kept, but it is sufficient if it be necessary or convenient to the discharge of his official duty. 'Any record required by law to be kept by an officer, or which he keeps as necessary or convenient to the discharge of his official duty, is a public record.' (Cyclopedic Law Dictionary, p. 776.)'' (*People* v. *Tomalty,* 14 Cal.App. 224, 231 [111 P. 513].) On the other hand, the mere fact that a writing is in the custody of a public agency does not make it a public record. (*Miller* v. *Murphy,* 78 Cal.App. 751, 755 [248 P. 934]; *Coldwell* v. *Board of Public Works,* 187 Cal. 510, 518-520 [202 P. 879]; *Whelan* v. *Superior Court,* 114 Cal. 548, 550 [46 P. 468].)

It is alleged in the petition herein that the city council, at a regular and open meeting held on January 16, 1962, and after public discussion, duly voted to and did appoint an independent investigative agency to make an investigation and report the circumstances surrounding the dismissal of the chief of police; that on February 16, 1962, "said investigators completed their investigation, and a final, written, confidential report was submitted by them to your Petitioners. Said confidential investigative report relates to matters affecting the appointment, employment and dismissal of public officers and employees of the City of Santa Monica and considers complaints and charges brought against public officers and employees of said City." It is further alleged that petitioners "are uncertain and undecided as to the truth of some of the complaints and charges reported in said investigative report respecting public officers and employees of the City of Santa Monica and other internal municipal affairs of said City, and that the truth or falsity of such complaints and charges and other matters can only be determined by further investigation by your Petitioners and/or duly constituted law enforcement agencies."

In an affidavit of the city attorney of Santa Monica it is asserted that the city council held a special meeting on February 20, 1962, at which time the mayor of the city advised the council and the general public present that he had forwarded copies of the report to the district attorney, grand jury division, and to the Insurance Commissioner for such action as they deemed advisable. The matter of what to do with the report was thrown open to public discussion, following which the council voted to maintain the report as a confidential report until it had been considered by the two mentioned agencies; that on February 28, the complaints committee of the grand jury reviewed the report and determined to take no action, but as of March 1, 1962, the city council had received no communication from the Insurance Commissioner. The city attorney states that the excerpts from the report that were read to him "concerned . . . certain alleged criminal activities." The petition for writ of mandate was filed on February 26, 1962, 10 days after the report was submitted to the council.

The affidavit of H. Frank Angell, one of the investigators, avers "[t]hat in the course of the investigation, your affiant interviewed numerous private citizens of the City of Santa Monica, and that in order to obtain the cooperation and

complete statements from said citizens in connection with the matter being investigated, affiant did promise said citizens that their statements and names would remain confidential and would be communicated only to Petitioners herein and/or duly constituted law enforcement agencies. That it would have been impossible to obtain the information and statements from said citizens without such guarantee.''

We are of the opinion that this investigative report, procured for informative purposes only, bearing no stamp of official approval, and on which no official action had been taken by the city council, is not a ''public record'' within the meaning of the above code sections. (See *Coldwell* v. *Board of Public Works, supra,* 187 Cal. 510, 519-520.)

Real parties in interest insist, however, that the report comes within the meaning of ''other matters in the office of any officer'' as provided in Government Code, section 1227.

The phrase ''other matters'' has been held to be ''matter which is 'public,' and in which the whole public may have an interest.'' (*Whelan* v. *Superior Court, supra,* 114 Cal. 548, 550.) It is stated in *Runyon* v. *Board etc. of Cal.,* 26 Cal. App.2d 183, 184 [79 P.2d 101] : '' [A]lthough it has been held that the use therein of the words 'other matters' operates to extend, in a certain class of cases, the right of access to documents which are not required by law to be filed as public records, but which relate to matters essential to the general welfare of taxpayers, . . . the courts have consistently declared that in another class of cases public policy demands that certain communications and documents shall be treated as confidential and therefore are not open to indiscriminate inspection, notwithstanding that they are in the custody of a public officer or board and are of a public nature.'' (See *Chronicle Pub. Co.* v. *Superior Court,* 54 Cal.2d 548, 568-570 [7 Cal.Rptr. 109, 354 P.2d 637] ; *City & County of San Francisco* v. *Superior Court, supra,* 38 Cal.2d 156, 161; 18 Ops. Cal.Atty.Gen., 231, 235; 27 Ops. Cal.Atty.Gen., 194, 195-196.)

There is no precise formula by which it can be determined whether a writing is such ''other matter''; it depends in each instance upon the facts of the particular case. It is obvious that not every piece of correspondence or written statement lodged in the office of a public officer partakes of such a public interest as to be open to general inspection. It was early stated in *Colnon* v. *Orr,* 71 Cal. 43, 44 [11 P. 814] : ''To declare such to be the law would be to say that any communi-

cation aspersing the character of a public officer, being received by the board of directors, to which he is amenable, and filed with the custodian of their records, would thereby become a public record, and be open to the idle curiosity of any and all persons.

"In this way the most honorable of men might be attacked, and each individual of the whole public be permitted to inspect the document containing such attack without having the slightest beneficial interest in the matter, and actuated by no other motive than to repeat what might or might not be a slander all over a community."

██ Under Government Code, section 1227, public records and other matters are open to inspection "except as otherwise provided." A recognized exception under this provision is that contained in Code of Civil Procedure, section 1881, subdivision 5, which provides: "A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the discloseure."

Although it has not been clearly established that all matter contained in the report was obtained only upon the assurance to the informer that it would be held confidential, it is clear that in order to obtain a report of this type *necessarily* much of the information could have been had only upon such an understanding. "If every citizen who knows of the unfitness of an officer or employee, or of facts he thinks require an investigation, believes it his duty to lodge information before the board, he will hesitate a long while before doing so if he knows his complaint is to be made public and become of the public records, so that any one may have access to it and he subjected to action for a possible libel. It is not to be expected, if that is so, that very many will come forward and lodge a complaint. . . . ██ In our opinion these communications by citizens to the Complaint Board, covering the conduct of public officers and employes, are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated." (*State* ex rel. *Douglas* v. *Tune,* 199 Mo.App. 404 [203 S.W. 465, 467]. See also *People* v. *Pearson,* 111 Cal.App.2d 9, 24 [244 P.2d 35], wherein it was held that public policy requires that documents in the sheriff's office relating to law enforcement be treated as confidential.) Whether confidential matters shall be made public is within the sound discretion of the municipal body. (See

*Chronicle Pub. Co.* v. *Superior Court, supra,* 54 Cal.2d 548, 572; 18 Ops. Cal.Atty.Gen. 231.)

We believe this to be an appropriate case in which to adhere to the policy of preserving official confidence, and that the public welfare to be served by such confidence outweighs the general public interest in disclosure. We find no duty imposed by law, nor an abuse of discretion, which would justify the issuance of a writ of mandate.

The ''Brown Act'' (Gov. Code, §§ 54950-54960) concerns itself with public meetings. We think it is immaterial to the questions before this court whether the meeting of February 16, was or was not in violation of the act.

Let the peremptory writ issue as prayed. The demurrer to the petition herein is overruled.