629 P.2d 330

STATE of New Mexico, ex rel. ATTORNEY GENERAL, Petitioner,

v.

The FIRST JUDICIAL DISTRICT COURT OF NEW MEXICO, Respondent.

No. 13504.

Supreme Court of New Mexico.

May 15, 1981.

Rehearing Denied June 10, 1981.

Jeff Bingaman, Atty. Gen., Art Encinias and Reese Fullerton, Asst. Attys. Gen., Santa Fe, for petitioner.

Jones, Gallegos, Snead & Wertheim, John Wentworth and Steven L. Tucker, Santa Fe, for Jimmy Urioste, Manuel F. Martinez and Ray Vallejos.

Ellen Pinnes, Santa Fe, for Antonio De-Vargas.

Teel & Walker, John L. Walker, Albuquerque, for Herman R. Buzbee.

Mark H. Donatelli, Prison Defense Director, David Stafford, Asst. Public Defender, Santa Fe, for Richard Chapman and Michael Colby.

D'Angelo, McCarty & Vigil, Scott McCarty, Albuquerque, for respondents.

## OPINION

RIORDAN, Justice.

At the request of the Attorney General we issued an alternative writ of superintending control in this cause. We also ordered a stay on all present proceedings involving the discovery of material in the possession of the Attorney General relating to the 1980 Penitentiary of New Mexico riot.

■ We have determined that the action by this Court on the writ of superintending control is premature insofar as it relates to any criminal case. The district court has not ruled on the discovery issues in any criminal cases. For this reason, the writ

and stay in the criminal matters is hereby quashed.

The discovery matters in pending and future civil cases is a different matter. There have been over five hundred notices filed against the State of New Mexico under the Tort Claims Act, §§ 41–4–1 through 41–4–26, N.M.S.A. 1978 (Orig.Pamp. and Cum.Supp.1980), for damages arising out of the riot. At the time we issued our writ, five civil cases were pending in district court, all in the pre-trial discovery stage. The litigants involved in the cases that have been filed are seeking full disclosure of all of the investigative material in the Attorney General's possession. Three district judges, sitting *en banc*, heard the competing claims and issued a joint opinion and supplemental letter recognizing executive and public interest privileges and setting up procedures for *in camera* inspection. However, one of the trial judges who participated in the joint opinion left office and his successor refused to issue orders implementing the opinion in the two cases pending before him. The Attorney General claims that the opinion is in error in a number of respects and that the materials in his possession are not subject to discovery. The district court certified the matter for an interlocutory appeal, but the Court of Appeals denied the motion.

The Attorney General seeks a ruling from this Court that will prevent the judges of the First Judicial District from ordering discovery of any of the materials and information obtained by his office during the investigation into the February 2, 1980, Penitentiary of New Mexico riot.

We are generally reluctant to issue a writ of superintending control directed at a lower court while a case is in progress. However, the number of potential cases that may arise out of the penitentiary riot and the cumbersome and expensive trial and appellate process make this case, in our judgment, one of paramount importance and compel the Court to exercise its superintending control in this matter. *State ex rel. DuBois v. Ryan*, 85 N.M. 575, 514 P.2d 851 (1973).

Shortly after the Attorney General began his investigation into possible criminal charges arising out of the riot, he ceased that investigation and transferred all the investigative files in criminal matters to the district attorney in the First Judicial District. The Attorney General also separated his office from any investigation into any possible civil actions that might be brought against the State under the Tort Claims Act as a result of the riot. This was done to assure that the investigation by the Attorney General was impartial and that his report on the riot would be based upon candid information and opinions. The Attorney General completed his investigation with funds appropriated by the Legislature for this purpose. After the report of the riot was released, the Attorney General received a federal grant, for which application had previously been made, to assist his office.

In the first phase of the investigation, which was an inquiry into the events that occurred just prior to, during, and in the aftermath of the riot, persons interviewed were promised by the Attorney General's staff that their names would be kept "completely anonymous, unless you ask us to use your name." It was also promised that a final report on the riot would be issued, "but no other information which we gather will be disclosed to any other public or private person." Elaborate precautions were taken, such as destroying the tapes of the interviews and editing the typed interviews to conceal identities to prevent the discovery or identification of the person being interviewed. The Attorney General cites no authority, either by statute or court rule, that authorizes such a promise of confidentiality.

The second phase of the investigation was conducted in a different manner and dealt with determining and analyzing practices and policies at the penitentiary for the last ten years. Of the 133 persons interviewed during this second phase, seventy-seven guards and inmates were later randomly selected and requested to answer written questionaires. They were asked not to sign

or identify themselves in the questionaire and were given no promise of confidentiality. The Attorney General placed transcripts of these questionaires in the state archives without any identification as to the person who executed the documents.

The Attorney General has asserted in the trial court and before us a number of very broad claims of privilege and confidentiality. He claims that the privileges are absolute and that the materials are not subject to discovery in any manner. The trial court did not agree with this contention nor do we.

■ A person, through judicial process, is generally required to disclose any information which he may possess that is relevant to a case pending before a court of justice. *Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976). However, there are exceptions to this general rule. For example, the Constitution of the United States provides that no person shall be compelled in any criminal case to be a witness against himself. In addition, other evidentiary privileges have been recognized by this Court or adopted in our Rules of Evidence.

As a preliminary matter we note that [o]ur constitutional power under N.M. Const. art. III, § 1 and art. VI, § 3 of superintending control over all inferior courts carries with it the inherent power to regulate all pleading, practice and procedure affecting the judicial branch of government. (Citation omitted.)

*State ex rel. Anaya v. McBride,* 88 N.M. 244, 246, 539 P.2d 1006, 1008 (1975).

The powers essential to the functioning of courts, in the absence of the clearest language to the contrary in the constitution, are to be taken as committed solely to us to avoid a confusion in the methods of procedure and provide uniform rules of pleading and practice.

*State v. Roy,* 40 N.M. 397, 421, 60 P.2d 646, 661 (1936).

The rules of evidence, including rules of privilege, are part of the judicial machinery administered by the courts for determining the facts upon which the rights of the litigant rest and are resolved. *Ammerman v. Hubbard Broadcasting, Inc., supra.*

Pursuant to the exercise of this power, we have adopted a comprehensive set of rules of evidence which govern proceedings before the courts. N.M.R.Evid., N.M.S.A. 1978 (Orig.Pamp. and Cum.Supp.1980). Article V of these rules sets forth the privileges available in judicial proceedings.

The starting point in any inquiry regarding privileges is Rule 501. This rule states:

Except as otherwise required by constitution, and except as provided in these rules or in other rules adopted by the supreme court, no person has a privilege to:

(1) refuse to be a witness; or

(2) refuse to disclose any matter; or

(3) refuse to produce any object or writing; or

(4) prevent another from being a witness or disclosing any matter or producing any object or writing.

N.M.R.Evid. 501, N.M.S.A. 1978.

## EXECUTIVE PRIVILEGE

■ The Attorney General claims that he is exempt from disclosing any information collected by his office during the investigation of the riot because of the existence of an executive privilege. As mentioned above, for a privilege to exist in New Mexico, it must be recognized or required by the Constitution, the Rules of Evidence, or other rules of this Court. Neither the Rules of Evidence nor other rules of this Court provide for an executive privilege. We hold, however, that recognition of an executive privilege is required by the Constitution of the State of New Mexico.

Article III of the Constitution provides for the separation of powers among the three departments of state government. Certain rights are implied as being inherently necessary to foster and give meaning to the intent of the Constitution. The executive department is independent within its own sphere and has the implied rights vested in it by the Constitution in order to maintain its independence.

Inherent in the successful functioning of an independent executive is the valid need for protection of communications between its members. The purposes of the executive privilege are to safeguard the decision-making process of the government by fostering candid expression of recommendations and advice and to protect this process from disclosure. Executive personnel who fear or expect public dissemination of their remarks may temper their comments because of their concern for their own personal interests, safety, or reputation. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C.1966), *aff'd on opinion below*, 384 F.2d 979, *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

Executive privilege is a recognition by one branch of government, the judiciary, that another co-equal branch of government, the executive, has the right not to be unduly subjected to scrutiny in a judicial proceeding where information in its possession is being sought by a litigant. The legislative and judicial branches of state government enjoy similar privileges which are required to be recognized by this Court under our Constitution.

■ The Attorney General is a member of the executive department of state government. N.M.Const., Art. V, § 1. As a member of the executive he enjoys the right to claim only the executive privilege.

The mere fact, however, that the executive department holds information and claims executive privilege does not of itself render the information exempt from judicial process. Nor does the fact that the privilege is of constitutional origin make the privilege absolute. An absolute privilege would conflict with the constitutional duty of the courts to do justice in matters brought before it.

■ The need for confidentiality among the executive is worthy of protection through an evidentiary privilege. However, when this privilege comes into confrontation with other values or interests which are also protected by law, a balancing of the protected interests must be undertaken by the courts.

■ Trial courts are first required to determine whether the claim of executive privilege has been properly invoked in each situation. Once it is found that the privilege applies, the trial court must balance the public's interest in preserving confidentiality to promote intra-governmental candor with the individual's need for disclosure of the particular information sought. *United States v. Nixon, supra; Armstrong Bros. Tool Co. v. United States*, 463 F.Supp. 1316 (Cust.Ct.1979).

■ In administering this balancing test, certain procedures are followed. The movant must first show good cause for the production of the requested information. If good cause can be shown, the court must then conduct an *in camera* examination of the requested material. The trial court must be satisfied that the requested material would be admissible in evidence and that it is otherwise unavailable by exercise of reasonable diligence. Once these prerequisites are met, the requested information is discoverable provided that the public's interest in preserving confidentiality does not outweigh the specific needs of the movant. *See United States v. Nixon, supra; Armstrong Bros. Tool Co. v. United States, supra.*

■ The material obtained by the Attorney General from corrections officers and other executive department personnel is protected by the executive privilege. However, this privilege does not protect communications, whether intended as confidential or not, between the executive department and members of the public or others not employed in the executive department.

## PUBLIC INTEREST PRIVILEGE

The Attorney General also asserts that the information in his possession is exempt from discovery under a privilege which protects communications between private individuals and government officials, and which he refers to as a "public interest" privilege.

He claims that this privilege is needed to encourage persons to provide information to the government. For a public interest privilege to exist, it must be recognized or required by the Constitution, the Rules of Evidence or other rules of this Court. N.M.R.Evid. 501, N.M.S.A. 1978.

We find no basis in the Constitution for the existence of a public interest privilege. Article III of the Constitution, on which we based the existence of an executive privilege, provides for separate and independent departments of government. However, there is no basis in the separation of powers doctrine for a public interest privilege. The inherent right of the executive to not be subjected to undue judicial scrutiny of its internal affairs does not encompass nor extend to communications or situations involving persons who are not within the executive department.

■ There is no mention of a specifically entitled "public interest" privilege in the Rules of Evidence or other court rules. However, two of our Rules of Evidence provide privileges similar to a "public interest" privilege. The first is Rule 510 of the Rules of Evidence which states:

> The United States or a state or a subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

N.M.R.Evid. 510(a), N.M.S.A. 1978.

Rule 510 is a recognition by the judiciary that certain privileges are necessary to aid law enforcement officers and the Legislature in obtaining information through investigations and hearings without having to be concerned with being subpoenaed into court or having to disclose sources of information.

Although the Legislature appropriated money for the Attorney General to conduct the study, the Attorney General cannot be considered a "member of a legislative committee or its staff" for purposes of falling within the privilege of Rule 510. Nor does the fact that the Attorney General was investigating this matter at the request of the Governor automatically render the information privileged under Rule 510. The Governor asked the Attorney General to "investigate the circumstances surrounding the violence at the New Mexico Penitentiary and to initiate such criminal prosecutions which, in your judgment, are appropriate in the interests of the State of New Mexico."[1] This investigation is within the jurisdiction of the Attorney General when the Governor so requests. § 8–5–3, N.M.S.A. 1978. It is only where information relating to or assisting in an investigation of a possible violation of law was furnished to the Attorney General as a law enforcement officer that he would have a privilege to refuse to disclose the identity of the person who furnished the information. However, the Attorney General has not asserted a privilege under Rule 510.

■ The second evidentiary rule providing for a privilege similar to the claimed public interest privilege is Rule 502 of the Rules of Evidence, N.M.S.A. 1978, which states:

> A person, corporation, association or other organization or entity, either public or private, making a return or report *required by law* to be made has a privilege to refuse to disclose and to prevent any other person from disclosing the return or report, *if the law requiring it to be made so provides.* A public officer or agency to whom a return or report *is required by law* to be made has a privilege to refuse to disclose the return or report *if the law requiring it to be made so provides.* (Emphasis added.)

Neither the statute which authorizes the Attorney General to conduct investigations

1. Letter from Governor Bruce King to Attorney General Jeff Bingaman dated February 11, 1980.

at the request of the Governor, the Appropriations Act [2], nor any other statute to which we are referred grants a privilege under Rule 502.

We can assume only that the Legislature did not intend that the material accumulated by the Attorney General during his investigation be privileged unless the privilege was one already provided by court rule or existing law.

Both the Attorney General and the trial court rely on the case of *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977) to support the existence of a public interest privilege. The decision in that case does not give rise to an evidentiary rule of a public interest privilege.

*Alarid* was an action by a reporter on behalf of a student newspaper against the personnel director for the University of New Mexico. The personnel records of thousands of employees were being sought by the plaintiff under Section 71–5–1, N.M. S.A. 1953 (Supp.1975) [now codified as Section 14–2–1, N.M.S.A. 1978], which provides, with limited exceptions, for a citizen's right to inspect all public records. This Court held that certain personnel records were exempt because of their similarity to records specifically exempted under the statute.

The *Alarid* case and the statute under which it was brought involves an interpretation of the law enacted by the Legislature. It did not, nor was it intended to, create a new evidentiary privilege applicable to discovery. *See generally Kerr v. United States Dist. Ct. for North Dist. of Cal.*, 511 F.2d 192 (9th Cir. 1975), *aff'd*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). We have previously pointed out that evidentiary rules can only be adopted or recognized by this Court. *Ammerman v.*

*Hubbard Broadcasting, Inc., supra.* There is a difference between what is subject to discovery in a court of justice and what private citizens are able to discover under "Right to Know" statutes. The Court has never ruled on whether materials excepted under this statute may be subject to discovery in a case where the material is relevant to the issues presented.

■ Many of the cases upon which the Attorney General relies to show the existence of a public interest privilege are based upon common law evidentiary principles. The common law has been adopted in New Mexico. § 38–1–3, N.M. S.A. 1978. However, the common law does not apply when the subject matter of any procedural right is fully covered by the Constitution, statutes or rules. *See Sellman v. Haddock*, 62 N.M. 391, 310 P.2d 1045 (1957).

■ The New Mexico Rules of Evidence are patterned after the Federal Rules of Evidence. However, our Rule 501 is very different from Federal Rule 501 which states that privileges are "governed by the privileges or the common law." The fact that New Mexico did not follow the approach of Congress but instead limited the privileges available to those recognized by the Constitution, the Rules of Evidence, or other rules of this Court manifests the abrogation and inapplicability of the common law evidentiary privileges.

If we were to accept the Attorney General's position as to the public interest privilege, there would be no limit to the communications that could be protected.

## CONFIDENTIALITY REQUIRED BY FEDERAL LAW

■ The Attorney General maintains that since his office received a federal grant

---

**2.** Section 9 of 1980 N.M. Laws, ch. 24 reads as follows:

"APPROPRIATION.—There is appropriated from the general fund to the attorney general the sum of one hundred thousand dollars ($100,000) for expenditure in the sixty-eighth and sixty-ninth fiscal years for the purpose of conducting a study to determine the cause of the events at the state penitentiary on or about February 2 and 3, 1980, to investigate any claims the state may have against other persons and to recommend any necessary changes in the administration and facilities of the penitentiary. The attorney general shall report his findings to the first session of the thirty-fifth legislature. Any unexpended or unencumbered balance remaining at the end of the sixty-ninth fiscal year shall revert to the general fund."

to supplement the funds appropriated by the Legislature to investigate the riot, that under federal law, 42 U.S.C. § 3789g(a) (1976) (Supp. III 1979), he must maintain the confidentiality of the records and his sources. Although this claim was not raised or ruled on by the trial court, the various exhibits attached to the briefs and the legal arguments and authorities submitted to the Court fully present this claim. We will discuss and decide this issue as if it had been ruled on in the trial court.

The Attorney General applied for a grant from the Law Enforcement Assistance Administration (LEAA) to assist in the investigation and the preparation of the report. There is some difference of opinion as to when and how the application was made. However, the Attorney General concedes that the official notification of the award of the grant is dated September 29, 1980[3]. The purpose of the grant is for "emergency aid for the New Mexico State Penitentiary riot." The period of the grant is from September 1, 1980 to September 1, 1981.

The report of the Attorney General on the riot was issued in two parts. The letter introducing the second part of the report is dated September 25, 1980, which is four days before the grant was actually awarded. The Attorney General, by necessity, must have completed his investigation before the award of the grant. In light of this, the Attorney General is not able to claim a privilege, assuming one exists under federal law, to prevent disclosure of the evidence obtained for the report.

The criteria we set out in this opinion are intended to serve as broad guidelines for the discovery allowed in these civil cases. We cannot anticipate each problem that will arise, nor do we tell the trial court when it is necessary or appropriate to conduct *in camera* hearings to enable them to rule on the claims of the executive privilege that may be raised or the confidential informant privilege that might be claimed under Rule 510 of the Rules of Evidence. Like-

wise, we do not tell the trial court when it is appropriate to issue protective orders under Rule 26 of the New Mexico Rules of Civil Procedure, N.M.S.A. 1978 (Repl.Pamp. 1980), to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. In our view, the rules are self-explanatory and have been interpreted a number of times by the Court of Appeals and this Court in the past.

In ruling on the discovery motions in the criminal cases, the trial court should be governed by the principles set out in this opinion insofar as appropriate. However, the interest in preserving the confidentiality of the privileged materials in the possession of the Attorney General in civil cases may be outweighed by a demonstrated, specific need for evidence in a criminal trial.

To the extent that this opinion is inconsistent with the previous discovery orders issued in those civil cases arising out of the 1980 riot at the Penitentiary of New Mexico, the First Judicial District Judges are directed to follow this opinion and be guided by the principles set out herein.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.

EASLEY, C.J., and FEDERICI, J., concurring in part and dissenting in part.

EASLEY, Chief Justice and FEDERICI, Justice (dissenting).

We concur in part and dissent in part. We agree that this Court is reluctant to issue a writ of superintending control directed at a lower court. However, the majority of this Court has decided that it is appropriate to exercise our superintending control in a case of great public interest such as this one. The number of potential cases arising out of the penitentiary riot, the cost of litigation, the cumbersome and expensive trial and appellate process, all combine to compel this Court to exercise its

---

**3.** Letter from Law Enforcement Assistance Administration awarding grant # 80–PG–AX–     0080 dated September 29, 1980.

superintending control in this matter. The majority applies this reasoning only to the civil cases arising out of the riot. The basis of the majority opinion is that the trial court has not ruled on the discovery issues in any criminal cases. However, the matters are now pending in the district court and no doubt will soon be back in this Court. The reasons for exercising our superintending control are just as strong in the criminal cases as they are in the civil cases. From a review of the statutes, rules and case law, there can be little doubt that any privileges which apply in civil matters extend to criminal proceedings as well. *Cirale v. 80 Pine Street Corporation*, 35 N.Y.2d 113, 359 N.Y.S.2d 1, 316 N.E.2d 301 (1974). Because this is true, it is inappropriate to exercise our superintending control in civil cases and not do so in the criminal cases, when the legal issues to be decided are identical. Our principles of judicial economy and prompt administration of justice are subverted by the majority's decision to rule on civil proceedings but wait until later to decide applicability of privileges in the criminal proceedings.

We agree with the majority that a claim of executive privilege is available in New Mexico, and we agree with the tests set down by them in determining applicability of the privilege in individual cases.

In determining that an executive privilege exists in New Mexico, the majority begins with the New Mexico Constitution. This is a logical starting place, since our Constitution controls if any state statutes or judicial rules conflict with it. The majority points out that Article III of the New Mexico Constitution provides for the separation of powers among the three departments of government. Each department is independent within its own sphere and has expressed and implied powers vested in it by the State Constitution. *Cf. Marshall v. Gordon*, 243 U.S. 521, 37 S.Ct. 448, 61 L.Ed. 881 (1917). Since the Attorney General is a member of the Executive Department, 'N.M.Const., Article V, § 1, he is entitled to all of the express and implied powers within the sphere of the Executive Department.

Implied powers of a department are such powers as are necessary to enable it to perform its duties or to exercise the powers expressly conferred by the Constitution. *Marshall v. Gordon, supra.*

The majority finds an implied power in the Executive Department to invoke the *executive privilege* because "it is necessary and appropriate to the powers of the executive that [it] be free from disclosure of confidential communications among its members." We agree. However, if we are to give effect to the executive privilege, the same reasons apply for giving effect to a *public interest privilege*.

Any analysis of the public interest privilege must begin with the New Mexico Constitution as was done by the majority here for the executive privilege.

The public interest privilege applies to confidential communications to public officers, in the performance of their duties, where the public interest requires that the confidential communications or their sources not be divulged. *See Cirale v. 80 Pine Street Corporation, supra; Fischer v. Citizens Committee*, 72 Misc.2d 595, 339 N.Y.S.2d 853 (1977).

A public officer is one whose position is created by law, who has certain definite duties imposed by law, which must involve the exercise of some portion of the government power. *Pollack v. Montoya*, 55 N.M. 390, 234 P.2d 336 (1951).

The office of Attorney General is created by Article V, § 1 of the New Mexico Constitution. The Attorney General has certain definite duties imposed by law, and they involve the exercise of a portion of the executive power. The Attorney General is a public officer. As such, he must exercise such implied powers as are necessary for him to perform his duties. Just as it is necessary and appropriate that his intra-governmental confidential communications be free from disclosure (executive privilege), so it is necessary and appropriate that certain confidential communications from the public and the identity of other informants be free from disclosure (public interest privilege). Both privileges are neces-

sary to enable the Attorney General to perform his duties as an executive officer under the New Mexico Constitution.

The majority finds that an executive privilege for internal communications is necessary to the successful functioning of an independent executive and therefore is implied in the Constitution. But the majority's analysis of a constitutional basis for a public interest privilege extends no further than a bare conclusion that the privilege inherent in the executive "does not encompass nor extend to communications or situations involving persons who are not of the executive." In so concluding, the majority has closed its eyes to the possibility that there may exist, in rare and compelling circumstances, situations in which a privilege for communications between members of the Executive Department and the public is equally necessary to the successful functioning of an independent executive.

At stake is the ability of the Executive Department to investigate the causes of the penitentiary riot. Such an investigation is of vital importance in order to enable the executive to identify and root out the causes and contributing factors of the riot in order to prevent similar catastrophes in the future. In these extraordinary circumstances, a limited privilege for communications between Executive Department investigators and members of the public is crucial to the ability of the Executive Department to effectively conduct such an investigation. Anything less is a denial of the ability of the Executive Department to perform its constitutional duties.

An additional reason is available for upholding both the executive privilege and the public interest privilege. Like the federal courts which are governed by privileges available under the common law, so the courts of this State are governed by privileges available at common law when not otherwise covered in our Constitution or by the rules of this Court because New Mexico has adopted the common law. Section 38–1–3, N.M.S.A. 1978.

That common law privileges exist in New Mexico is supported by *State ex rel. New-*some v. Alarid, 90 N.M. 790, 568 P.2d 1236 (1977). The majority holds that *Newsome* was a case which merely involved a statutory interpretation.

However, in that opinion, the Court quoted from *MacEwan v. Holm*, 226 Or. 27, 359 P.2d 413 (1961), with approval:

> The public's right of inspection is not without qualification. There may be circumstances under which the information contained in a record can be justifiably withheld from the person seeking it. Obviously, if it is shown that the information is being sought for an unlawful purpose, the request for it may be denied. [Citations omitted.] *Even where the request is made for a lawful purpose the public interest may require that the information be withheld. Thus where the information is received in confidence, it may be proper to refuse access to it. . . . And in* City and County of San Francisco v. Superior Court, *38 Cal.2d 156, 238 P.2d 581 (1952), confidential information furnished to a municipal corporation by some of its employees for the purpose of establishing rates of compensation was held to be non-accessible. Similarly, in* Mathews v. Pyle, supra, *75 Ariz. [76]. at page 81, 251 P.2d [893] at page 897, it was held that a report of a state Attorney-General to the Governor was subject to inspection unless* "confidential and privileged" *or if* "disclosure would be detrimental to the best interests of the state." *(Emphasis added.)*

*Id.* at 795, 568 P.2d at 1241.

The Court in *Newsome* concluded:

> We hold that a citizen has a fundamental right to have access to public records. The citizen's right to know is the rule and secrecy is the exception. Where there is no contrary statute or *countervailing public policy*, the right to inspect public records must be freely allowed. (Emphasis added.)

*Id.* at 797, 568 P.2d at 1243.

It is readily apparent that the opinion in *Newsome* involved more than statutory interpretation. There is precisely the sort of

"countervailing public policy" expressed in *Newsome* when one applies either the executive or the public interest privilege.

As was stated in *Jones v. State*, 58 A.D.2d 736, 395 N.Y.S.2d 862 (App.Div. 1977), the basic reason for recognition of a public interest privilege is to protect the "public interest in enabling the government effectively to conduct sensitive investigations involving matters of demonstrably important concern." *Id.* 395 N.Y.S.2d at 863. Certainly an investigation into the causes of the New Mexico State Penitentiary riot with a purpose of taking appropriate steps to prevent a recurrence is the type of investigation covered under the common law.

Respondents and real parties in interest argue that since neither the Governor nor the Legislature specifically granted the Attorney General the right to extend a promise of confidentiality to informants, the promise was of no effect. The Governor's letter and the Attorney General's authority under the letter are set forth in the majority opinion. Furthermore, the Legislature appropriated $100,000 to the Attorney General "for the purpose of conducting a study to determine the cause of the events at the state penitentiary on or about February 2 and 3, 1980, to investigate any claims the state may have against other persons and to recommend any necessary changes in the administration and facilities of the penitentiary." N.M. Laws 1980, ch. 24, § 9.

Neither of these directions to the Attorney General specifically allows him to grant confidentiality to sources of information. However, the common law public interest privilege does not rest upon a specific grant of privilege by the Governor, the Legislature, or our rules. It rests upon the common law. The majority reasons that this common law privilege was superseded by our Rules of Evidence. However, we do not believe that our Rules of Evidence contemplated the sort of extraordinary situation involved here, and we are convinced that they do not address the applicability of either the executive or the public interest privilege. *See State ex rel. Newsome v. Alarid, supra.*

For the reasons set forth above, we are of the opinion that both an executive and a public interest privilege exist in New Mexico. We would apply the same tests for disclosure under the public interest privilege as the majority has set forth under the executive privilege. We would direct the district court to apply these privileges to discovery matters in both civil and criminal cases arising out of the New Mexico State prison riot. In all other respects, we concur with the remainder of the majority opinion.